IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICKIE COOK, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-CV-3788-N |
| THE CITY OF DALLAS, *et al.*, | § § § | |
| Defendants. | § § | |

### ORDER

This Order addresses Defendant Angelia Herod-Graham's motion for summary judgment [190]. Because Herod-Graham is entitled to qualified immunity, the Court grants the motion.

### I. ORIGINS OF THE MOTION

This case arises out of Defendants the City of Dallas ("the City") and Herod-Graham's response to 9-1-1 calls from Plaintiffs Deanna Cook and Vickie Cook. On August 17, 2012, Deanna Cook, a domestic violence victim, called 9-1-1 for assistance while an intruder attacked her inside of her home. Nearly fifty (50) minutes after Deanna Cook placed her 9-1-1 call, two officers arrived at Deanna Cook's home. The officers knocked on the door and called Deanna Cook's cellular phone before leaving. On August 19, 2012, Plaintiffs Vickie Cook, Karletha Cook-Gundy, N.W., and A.W. (respectively, Deanna Cook's mother, sister, and daughters) (collectively, "Plaintiffs") went to Deanna Cook's home to check on her, at which point they noticed suspicious conditions at the house. Vickie Cook called 9-1-1

seeking help in entering her daughter's home. Herod-Graham was the emergency call-taker who received Vickie Cook's call. Rather than immediately send officers to Deanna Cook's home, Herod-Graham repeatedly told Vickie Cook that she must first contact the jails and local hospitals to look for Deanna Cook. Plaintiffs eventually decided to break into the home, at which point they found Deanna Cook's dead body half-in and half-out of the bathtub, floating atop overflowing water. Sometime after this incident, the City fired Herod-Graham.

Plaintiffs brought claims for violation of equal protection and due process under the Fourteenth Amendment, and a number of state law claims, against Tonyita Hopkins, Kimberley Cole, Johnnye Wakefield, Yaminah Shani Mitchell, Officer Julie Menchaca, Officer Amy Wilburn, Herod-Graham, the City of Dallas Police Department, and the City in Case No. 3:12-cv-03788-N ("*Cook I*"). The Court has dismissed these claims. Plaintiffs also brought claims against T-Mobile USA, Inc.; MetroPCS Communications Inc.; Samsung Electronics Co Ltd; Samsung Telecommunications America LLC; the City; and Herod-Graham in Case No. 3:14-cv-02907-P ("*Cook II*"). On September 25, 2015, the Court granted consolidation of *Cook I* and *Cook II*. The Court has dismissed Plaintiffs' claims against the telecommunications defendants.

On March 15, 2016, the Court granted summary judgment in favor of the City on Plaintiffs' *Monell* claims arising from Deanna Cook's August 17, 2012 9-1-1 call. Plaintiffs' remaining claim is that the City and Herod-Graham unconstitutionally deprived the Plaintiffs of equal protection of the law "in the refusal to prioritize and respond quickly to the call"

from Vickie Cook, which was the consequence of an alleged custom of discriminating in the treatment of 9-1-1 calls on the bases of race, gender, socioeconomic background, and status as a domestic violence victim. Plaintiffs allege that Herod-Graham either acted independently in depriving Plaintiffs of their constitutional rights, or alternatively that Herod-Graham followed the discriminatory customs and policies of the City.

Herod-Graham now moves for summary judgment, arguing that she is protected by qualified immunity. Plaintiffs oppose the motion.

## II. THE LEGAL STANDARDS

### A. The Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment

either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. The Qualified Immunity Standard

"Qualified immunity is a defense available to public officials performing discretionary functions ' . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Because qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that it does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). In the summary judgment context, courts "no longer [permit the plaintiff to] rest on the pleadings" and, instead, consider the evidence in the record in the light most favorable to the plaintiff. *McClendon*, 305 F.3d at 323 (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

In accordance with the *Saucier* test, the plaintiff must demonstrate a genuine issue of material fact: "(1) that the defendants violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992)). Stated more simply, to resolve a public official's qualified immunity claim, a court must consider two factors. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.*

"The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light

of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 235. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### III. HEROD-GRAHAM IS ENTITLED TO SUMMARY JUDGMENT

Because Plaintiffs have not produced summary judgment evidence sufficient to rebut Herod-Graham's defense of qualified immunity, Herod-Graham is entitled to summary judgment. Plaintiffs argue that Herod-Graham violated 42 U.S.C. § 1983 by refusing to prioritize and respond quickly to Vickie Cook's 9-1-1 call due to an alleged custom of discriminating in the treatment of 9-1-1 calls on the bases of race, gender, socioeconomic background, and status as a domestic violence victim.

"Section 1983 provides a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and the law of the United States." *Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 375 (E.D. La. 1997) (citing ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 8.1 (2d ed. 1994)). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Thus, a plaintiff must demonstrate that he or she has been treated differently due to membership in a protected class, and such plaintiff must also allege that such unequal treatment stemmed from a discriminatory intent. *See Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 228 (5th Cir. 2008).

ORDER – PAGE 6

A governmental entity providing protective services "may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989). However, for a plaintiff to sustain a gender-based equal protection claim, she must show: "(1) the existence of a policy, practice, or custom of law enforcement to provide less protection to victims of domestic assault than to victims of other assault; (2) that discrimination against women was a motivating factor; and (3) that the plaintiff was injured by the policy, custom, or practice." *Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000).

Herod-Graham argues that her discretionary actions were objectively reasonable, and that the record is devoid of any facts to suggest that her actions were the result of an intentional discriminatory motive. She claims that she followed the training she received as a City employee, and that she then used her reasonable judgment to respond to what she classified as a missing person 9-1-1 call. Herod-Graham claims that she did not recognize Vickie Cook's voice to be that of an African-American, that she did not know that Deanna Cook was a domestic violence victim, and that she did not ascertain that Deanna Cook's address was located in a socioeconomically deprived neighborhood. Accordingly, Herod-Graham claims that qualified immunity protects what she claims were her objectively reasonable actions.

In *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004), the Fifth Circuit held that where an appellee failed to state a violation of clearly established equal protection or due process rights against a 9-1-1 operator, the operator was entitled to the defense of qualified

immunity. In that case, a young woman called 9-1-1 to report that her father was drunk and potentially violent. That same young woman had a few months earlier called 9-1-1 to report that her father was drunk and becoming abusive to her and her mother. The 9-1-1 operator coded the call as a family violence assault, a lower priority level than an injury in progress, and no police units immediately responded. The 9-1-1 operator did not include the young woman's statements that she feared for her life or the prior report of the father's domestic violence. The father shot and killed the young woman and her mother. The Court held that even if the City's classification policy may have had an adverse disparate impact on female victims of domestic violence, the appellee made no showing that the City assigned a lower level priority code to 9-1-1 family violence assault calls as the result of an effort to discriminate against women. Without such evidence, the Fifth Circuit held that the 9-1-1 operator's actions were reasonable and that she designed her questions to assess the situation at hand. Further, the Fifth Circuit noted that there was no evidence that the police would have arrived in time to save the lives of the young woman or her mother.

     Here, Plaintiffs produce evidence sufficient to show that the City, at the time of the incident at hand, had a custom of providing less protection in 9-1-1 call taking on the bases of race, socioeconomic background, or status as a domestic violence victim. Plaintiffs provide this evidence in the form of citizen complaints, statements from the Mayor of Dallas, statements from other former 9-1-1 call operators, confirmed incidents of lost files and misplaced paperwork involving family violence, subsequent changes to City policies, and a review of the City's response times to 9-1-1 priority calls. However, this evidence is only

sufficient to demonstrate a discriminatory purpose if it "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). A discriminatory purpose is "more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Personnel Administrator v. Feeney*, 442 U.S. 256, 279 (1979). Plaintiffs, however, have not shown that the City's custom existed for the purpose of discriminating against an identifiable group. Even taking as true Plaintiffs' assertions that statistics show that City has a custom of giving a different and more rapid response to certain 9-1-1 callers than to others, that the Mayor of Dallas has pointed out the City's flaws in its responses to domestic violence victims and condemned the handling of Plaintiffs' 9-1-1 calls, and that the City has mishandled domestic violence cases and paperwork, none of this evidence demonstrates that the City or Herod-Graham acted *for the purpose* of causing an adverse effect upon an identifiable group. *See, e.g., Shipp*, 234 F.3d at 914 ("While statistical evidence showing disproportional impact is probative on the issue of gender-based motivation, such evidence without a showing of intent is insufficient to sustain an Equal Protection claim."); *see also Kelley v. City of Wake Village, Texas*, 264 Fed.Appx. 437, 443 (5th Cir. 2008) ("The mere existence of disparate treatment – even widely disparate treatment – does not furnish adequate basis that discrimination was [impermissibly] motivated.") (quoting *Soto v. Flores*, 103 F.3d 1056, 1057 (1st Cir. 1997)).

Further, an equal protection plaintiff "must show that her injuries are the result of law enforcement 'inaction or conduct pursuant to invidious policies.'" *Beltran*, 367 F.3d at 306 (citing *Shipp*, 234 F.3d at 914). Plaintiffs cannot show that Herod-Graham acted pursuant to any of the City's allegedly invidious policies. Herod-Graham, in her deposition testimony, states that she did not know what part of Dallas Vickie Cook called from, and that she could not ascertain the race of Vickie Cook. *See* App. To Def. Angelia Herod-Graham's Br. in Supp. of Mot. for Summ. J., Ex. A at 16–17 [189-1]. Further, Herod-Graham states that she did not know the reasons for Deanna Cook's previous 9-1-1 calls (i.e. that Deanna Cook was a domestic violence victim). *See* Def. Angelia Herod-Graham's Reply Br. in Supp. of Mot. for Summ. J. 6 [215]. Though Plaintiffs provide evidence to show that Herod-Graham had access to information in the Incident Editor and Premise History sufficient to show demographics and the nature of calls, such evidence does not show that Herod-Graham actually accessed that information. That Herod-Graham was aware that the police went to Deanna Cook's home two days prior is not enough to rebut Herod-Graham's statement that she knew no more than that fact.

Plaintiffs have not met their burden to show that Herod-Graham violated their equal protection rights. Thus, Plaintiffs have not rebutted Herod-Graham's assertion of qualified immunity.

## CONCLUSION

Based on the forgoing reasons, the Court grants Herod-Graham's motion for summary judgment.

Signed August 1, 2017.

_____
David C. Godbey
United States District Judge